Myrtle **CASSIDY**, Plaintiff,

v.

Anthony J. **CELEBREZZE**, Secretary of
Health, Education, and Welfare,
Defendant.

No. 1109.

United States District Court
S. D. West Virginia,
at Huntington.

Dec. 3, 1962.

Robert E. Lusk, Williamson, W. Va., for plaintiff.

Harry G. Camper, Jr., U. S. Atty., Huntington, W. Va., for defendant.

HARRY E. WATKINS, District Judge.

■ This is an action under 42 U.S.C. § 405(g) of the Social Security Act to review the final decision of the Secretary of Health, Education, and Welfare. That decision disallowed plaintiff's claim for the parent's benefits, for which she applied, under 42 U.S.C. § 402(h), as amended. The jurisdiction of this court is limited to a determination of whether that decision was based on substantial

evidence. 42 U.S.C. § 405(g); Carqueville v. Flemming, (7th Cir.), 263 F. 2d 875. The court is precluded from having a hearing de novo. See Carpenter v. Flemming, D.C.N.D.W.Va., 178 F. Supp. 791.

The Act, 42 U.S.C. § 402(h), as amended, provides, *inter alia*, that every parent of a person who dies fully insured can receive the parent's benefits if he has attained the age of 62, was receiving at least one-half of his support from the insured person at the time of such person's death, has not remarried since the insured person's death, and has filed timely proof of support.[1]

The Secretary's Regulations, section 404.332 (20 CFR 404.332), defines the term "one-half of his support" as follows:

"(c) *What constitutes at least one-half or more than one-half support.* A person is receiving at least one-half of his support from another if that other is making regular contributions, in cash or kind, to such support to the extent of one-half or more thereof. A person is receiving more than one-half of his support from another if that other is making such contributions to such support to the extent of more than one-half thereof. 'Contributions,' as used here, means contributions actually provided by the contributor from his own property or the use thereof, or by the use of his own credit. * * *"

Section 404.720 of the Regulations (20 CFR 404.720), dealing with acceptable evidence, provides as follows:

"A parent who applies for monthly benefits based upon the wages and self-employment income of an individual shall submit evidence of receipt of at least one-half of his support from such individual. Such evidence shall be a signed statement by the parent that, at the time of the individual's death, he was receiving at least one-half of his support from such individual. This statement shall set forth, as of the time of the individual's death and for a period of not less than one year prior to such time, the items expended and used for the parent's support and the value of each thereof, the amount of the parent's income, if any, and the items of contributions to the parent's support, the value and time of each, and by whom furnished. If the evidence described above is not obtainable, the reason therefor shall be stated and the applicant may submit other evidence of probative value. * * *"

On February 23, 1960, plaintiff filed an application for parent's benefits. The Bureau of Old-Age and Survivors Insurance determined that she was not entitled to such benefits because she had not been receiving at least one-half of her support from her son before he died. She was so notified by letter dated July 12, 1960. Her claim was again denied upon reconsideration on August 17, 1960. Plaintiff then filed on October 25, 1960, a request for a hearing before a hearing examiner of the Social Security Administration. Such a hearing was begun on March 24, 1961, and continued until July 31, 1961, at which time the evidence was completed and the record closed. In a decision dated August 15, 1961, the hearing examiner held that the wage earner, during the year before his death, did not contribute or furnish one-half or more of the plaintiff's support and that, therefore, she was not entitled to the parent's benefit for which she applied. On August 31, 1961, plaintiff requested review of the hearing examiner's decision

---

1. At the time plaintiff's son was killed on July 23, 1953, she was not entitled to benefits since the Act then provided that if the decedent left a widow, no parent's benefits could be paid. The Act was changed effective August 28, 1958, to allow parents to draw benefits in spite of this fact if they filed proof of support within two years of the date of enactment. See section 304 of Public Law 85-840.

by the Appeals Council. This request was denied on November 29, 1961. The decision thus became the final decision of the Secretary. The final decision is now before this court for determination as to whether there was substantial evidence to support this decision.

At the time of his death, the wage earner was 34 years of age, and was living in Pontiac, Michigan, with his wife and stepson in rented property. The wife and the stepchild both have since died. The wage earner was employed in 1952-1953 as a tractor-trailer driver for a corporation located in Pontiac, Michigan. His work consisted of traveling out of Pontiac to many parts of the country delivering automobiles. In 1952 he earned $3575.53 and in 1953, the year of his death, he earned $1560.74. The plaintiff stated that because the decedent traveled a great deal, he visited her about once every two weeks during the support year.

The plaintiff stated in her application for benefits that during the year prior to the wage earner's death, her husband, a son, a grandson, and her housekeeper, lived with her in her own home in Williamson, West Virginia. Her husband and the housekeeper made statements which corroborated plaintiff's statement that all of these individuals were living together in plaintiff's home during the year preceding decedent's death.

In her certificate of support, plaintiff stated that she received a $45.00 per month pension from the Veterans Administration based on a service-connected death of another son, $10.00 per month rent from real estate, and about $50.00 per month from her husband. Her husband received almost $200.00 per month from various sources. Plaintiff claimed that her income was supplemented by monthly contributions from the decedent in the amount of $40.00. He also paid the housekeeper $5.00 per week in addition. Plaintiff also stated that decedent gave her his $400.00 veteran's bonus in April, 1952, to reduce the mortgage on the house and for necessities. When this property was sold some time later, plaintiff gave her husband half the money after certain debts had been paid.

At the hearing, however, plaintiff stated that she and her husband had separated in 1951 (they were subsequently divorced in 1960, and plaintiff has not remarried) ; that he did not live at home during the support year, that he contributed nothing to her support after 1951; that he left home in February, 1952; and that her grandson did not live with her until after the decedent's death in 1953. She further testified that during the support year she and her housekeeper lived alone in her home and that the decedent actually gave her in excess of $100.00 per month in cash and groceries (not including the $5.00 per week for the housekeeper).

The housekeeper had submitted a written statement that at the time of the decedent's death five persons lived in the house. At the hearing she indicated that her written statement was in error and stated that she and plaintiff lived there during that period. She also testified that when plaintiff's husband was home, he lived in the second house on the property but ate all his meals with plaintiff.

Plaintiff's husband had executed a written statement in which he stated that he contributed all of his monthly income of almost $200.00 to the household during the support period except for payment of his personal debts. He also stated that the household consisted of the five persons mentioned above. At the hearing, however, he testified that from 1950 or 1951 he contributed nothing to the support of the plaintiff, that his income was $206.00 per month, and that he indulged himself and squandered his money. He further asserted that the statement signed by him was not correct and that it was not the same one that had been read to him before he signed. There was evidence that this bald allegation was unfounded.

Herbert Copley stated in an affidavit that plaintiff's husband lived in his house from March, 1951, to September, 1953, and paid him a monthly rent of $25.00.

Perry Cassell, a long-time friend of the decedent, testified that the decedent had told him that he had made cash contributions to plaintiff's support. On one occasion he saw decedent give plaintiff approximately $200.00 in cash around June, 1952, and that he was present when decedent bought groceries for the plaintiff. Another witness testified that plaintiff's husband spent all of his money on drink, cards, and women.

The hearing examiner concluded from all the evidence that the husband lived with plaintiff (in at least one of her two houses) during the period in question, ate his meals with her most of the time, and contributed at least $50.00 per month toward her support. He also concluded that at the minimum she was receiving $1140.00 per year (based on the Veterans Administration payment, rental, and money from her husband) from sources other than the decedent. The examiner stated:

"There is probably no doubt but that the wage earner had contributed considerably to his mother when he was single and during the war (World War II years), including even his $400 bonus, but it is inconceivable that he, earning little more than $3000 a year, could or would strip his wife and child of his income (to an extent estimated by the claimant as being almost $2000 a year) in an attempt to support his mother, when his father had available at least $2472 a year and she also having had at least $540 a year and owned real estate which he had just helped her to obtain."

In the absence of substantial proof, the contention of plaintiff is highly improbable. Her estimate of contributions is even more unrealistic in view of the fact that, in order to have made these cash contributions, the decedent must have made substantial expenditures for transportation in connection with visits to West Virginia. She says he visited her every two weeks and it was stated at the hearing that decedent's work did not take him to West Virginia, but that he used a bus or automobile. The acceptance of plaintiff's computation of contributions would be most illogical without reasonable documentation, in view of decedent's financial responsibilities to his wife, child and his own household.

It is also a fair inference from the evidence that the wage earner could not have supplied $1140.00 a year to his mother in view of his other family responsibilities (a wife and a stepchild and his somewhat limited income). Plaintiff's testimony would have raised the amount contributed to almost $2000.00 a year. This would be even more difficult to believe, if not impossible. As the public accountant stated during the first part of the hearing in March, 1961, he had no accounting method to establish that which plaintiff was claiming.

Prior to the receipt of notice of original disallowance, there was consistency in the statements of the husband, the housekeeper, and plaintiff. Later, when she tried to strengthen her claim for benefits, plaintiff stated that her husband contributed nothing to her support and that she received only $20 rental throughout the year from real property. She explains this by saying that she was confused and mistaken in her statements when she first filed her application, but yet these statements were corroborated by independent statements of her husband and housekeeper. The examiner was fully justified in questioning the veracity of this kind of testimony, especially when we consider that these original statements were prepared 30 to 90 days apart and were given independently of each other when the individuals had little or no incentive to consciously try to coordinate their statements. These individuals later claimed that all three statements were erroneous. The decision must turn on the credibility of the written statements and testimony, and it would seem that there is an abundance of evidence to support the finding of the examiner that the written statements made at or near the time the claim for benefits was filed are more credible. See Larmay v. Hobby, E.D.Wis., 132 F.

Supp. 738, and Thurston v. Hobby, W.D. Mo., 133 F.Supp. 205, each dealing with the issue of credibility.

There was substantial evidence to support the decision of the Secretary that during the year before his death the wage earner did not contribute or furnish one-half or more of the plaintiff's support. The plaintiff was not entitled to the parent's benefits for which she applied. Defendant's motion for summary judgment is sustained.